Neil BERGT, Plaintiff–Appellant,

v.

The RETIREMENT PLAN FOR PILOTS EMPLOYED BY MARKAIR, INC., Defendant–Appellee.

No. 99–36016.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 2002—Seattle, Washington.

Filed June 19, 2002.

Ronald W. Goss, Ellis & Goss, P.L.L.C., Seattle, WA, for the appellant.

Rosemary Phillips, Pension Benefit Guaranty Corporation, Washington DC, for the appellee.

Before BARRY G. SILVERMAN and ARTHUR L. ALARCON, Circuit Judges, and RUDI M. BREWSTER,* Senior District Judge.

## OPINION

BREWSTER, Senior District Judge.

Neil G. Bergt ("Bergt") appeals the lower court's summary judgment order denying him retirement benefits covered under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 et. seq. ("ERISA"). The central question in this case is how to interpret an ERISA plan

---

* The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

when the provisions of the plan master document are more favorable than, and conflict with, the statements of the plan summary. This Circuit has provided little guidance on this issue. The lower court held these conflicting provisions, when considered together, created an ambiguity that allowed the court to consider extrinsic evidence to determine the meaning of the ERISA plan. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

## I. Facts and Procedural History

Bergt, previously a pilot with MarkAir, Inc. ("the Company"),[1] served as its President and Chairman of the Board of Directors from 1975 to 1995. Beginning in 1976, Bergt participated in the company-sponsored profit-sharing plan and from 1984, he participated in the Employee Stock Ownership Plan ("ESOP"). In 1980, the Company created an ERISA retirement plan that allowed employees who were pilots, or former pilots, to participate. Section 3.03 of the retirement plan, however, excluded otherwise eligible employees who were "participants in any other pension, profit sharing, or retirement plan which is 'qualified' by the Internal Revenue Service and to which the Company is contractually obligated to contribute . . . ." The Company also issued a summary of the retirement plan, called a Summary Plan Document ("SPD"), that specified "if you are a member of another Company-sponsored retirement or profit sharing plan, you cannot be a member of this plan."

On March 22, 1996, Bergt filed a claim for benefits under the ERISA retirement plan. On April 28, 1998, the committee to oversee the administration of the retirement plan ("Committee") denied his request, claiming that he was ineligible based on Section 3.03 because he was a participant in the Company's profit-sharing plan. On June 30, 1998, Bergt petitioned the Committee for reconsideration. In denying his request, the Committee found that Section 3.03 of the retirement plan was ambiguous. Examining the SPD and extrinsic evidence, the Committee held the profit-sharing plan was " 'qualified' by the Internal Revenue Service" and constituted a plan "to which the Company was contractually obligated to contribute." In the alternative, the Committee ruled that the phrase, "which is 'qualified' by the Internal Revenue Service and to which the Company is contractually obligated to contribute," only modified "retirement plan," and did not modify "pension" or "profit sharing." Therefore, according to the Committee, an employee who participated in *any* profit-sharing plan was excluded from participating in the retirement plan. Thus, the Committee found Berg ineligible to participate on both grounds.

Bergt appealed the Committee's decision to the United States District Court for the District of Alaska. Both parties filed summary judgment motions. Bergt argued the Committee abused its discretion because it interpreted the retirement plan contrary to its plain language. The district court denied Bergt's motion for summary judgment and granted summary judgment affirming the Committee, but for a different reason. First, the court found the profit sharing plan was not a binding obligation on the Company. The lower court then ruled that although the language in the plan master document was unambiguous, when viewed in light of the conflicting SPD, an ambiguity was created as to whether Bergt was eligible to participate in the retirement plan. Since the

---

1. The Company was initially known as Interior Airways, Inc., which became Alaska International Air, Inc, which became MarkAir, Inc.

court found an ambiguity, it considered extrinsic evidence, concluding that Bergt was not eligible to participate in the retirement plan because the understanding of the parties was that an employee could not be a participant in both the retirement plan and a company-sponsored profit-sharing plan. Although the court reviewed the Committee's decision for an abuse of discretion, it noted that it would have granted summary judgment even if it had applied a *de novo* review.

## II. Discussion

### A. Standard of Review

■ We review a district court's grant or denial of a motion for summary judgment *de novo*. *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech.*, 125 F.3d 794, 797 (9th Cir.1997). We also determine which standard of review to apply to a committee's decision *de novo*. *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir.1996). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court said that when an ERISA plan grants discretionary authority to the plan administrator to determine plan eligibility, the court will ordinarily review a committee's decision to deny benefits for an abuse of discretion. In *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir.1999), the Ninth Circuit held that the plan documents must grant this discretionary authority unambiguously; if the plan fails to do this, the district court must review a committee's decision *de novo*.

In this case, the retirement plan language unambiguously gives the Committee broad discretion to determine eligibility benefits. It grants the administrative committee the "power" and "duty" to "interpret the plan and to resolve ambiguities, inconsistencies and omissions" and to "decide on questions concerning the plan and the eligibility of any Employee ...."

*See Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir.2000) (noting how there "is no magic to the words 'discretion' or 'authority' ").

■ Even if a plan, however, provides this discretionary authority, warranting review for an abuse of discretion standard, the courts will apply a heightened standard of review if one of the plan administrators has a "serious" conflict of interest. *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322–23 (9th Cir.1995). Bergt maintains Committee member Kevin Cordell had a serious conflict of interest because he was both a beneficiary of the retirement plan and an administrator. Furthermore, according to Bergt, Laurence Rhodes, a former member of the retirement plan's administrative committee, said that Cordell told him that Bergt "was trying to get into the ... [retirement plan], and ... as long as [Cordell] had anything to say about it that would not happen." Also, members of the Committee admitted the underfunding of the retirement plan was a factor in their consideration of Bergt's claim.

This evidence fails to show a serious conflict. Cordell serving as an administrator while also being a beneficiary is not enough to show an actual conflict. *Atwood*, 45 F.3d at 1322–23. And it is not clear when Cordell made this statement to Rhodes, if he made it at all. Finally, considering the fact that the retirement plan was underfunded is not inconsistent with the Committee's duty to focus on how its decisions will affect other beneficiaries of the plan. *See Lang*, 125 F.3d at 798. Accordingly, the district court correctly reviewed the Committee's decision for an abuse of discretion.

To summarize, we review *de novo* whether, viewing facts most favorable to Bergt, the district court correctly held that no genuine issues of fact exist as to wheth-

er the Committee abused its discretion by denying Bergt benefits under the retirement plan.

## B. Summary Judgment

### SPD part of ERISA Plan

 The lower court committed legal error when it determined that the Committee did not abuse its discretion when it refused Bergt benefits under the retirement plan. As a preliminary matter, we conclude the SPD is a plan document and should be considered when interpreting an ERISA plan. The ERISA statute requires the plan fiduciaries to act solely "in accordance with the *documents and instruments* governing the plan . . . ." 29 U.S.C. § 1104(a)(1)(D) (emphasis added). Employers are required to provide participants with a copy of an SPD (not the plan master document) that describes the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" and shall "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)-(b). Furthermore, the SPD is the "statutorily established means of informing participants of the terms of the plan and its benefits" and the employee's primary source of information regarding employment benefits. *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1329 (9th Cir.1996), *citing, Alday v. Container Corp. of America*, 906 F.2d 660, 665 (11th Cir.1990). For these reasons, we follow the other courts that have held that the SPD is part of the ERISA plan. *Chiles v. Ceridian*, 95 F.3d 1505, 1511 (10th Cir.1996) (holding that "SPDs are considered part of the ERISA plan documents" and when "interpreting the terms of an ERISA plan we examine the plan documents as a whole"); *Alday v. Container*

*Corp. of America*, 906 F.2d 660, 665–666 (11th Cir.1990).

### Plan Master Document

In this case, the ERISA plan contains two conflicting plan documents: the plan master document and the SPD. The provisions in the plan master document show Bergt was eligible to participate in the retirement plan, which says that an employee who is a pilot, or a former pilot, is a member unless he "participates in another profit, pension, or retirement plan which is IRS qualified and to which the company was contractually obligated to contribute."

 The initial issue is whether the provisions of the plan master document are ambiguous, which would justify the Committee's use of extrinsic evidence to determine whether Bergt was eligible to participate in the retirement plan. *See Richardson v. Pension Plan Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997). The Committee considered extrinsic evidence after deciding that section 3.03 of the plan master document was ambiguous because (1) it did not specify the basis of the contractual obligation (i.e., by collective bargaining agreement or Internal Revenue Code), (2) it did not say whether the contractual obligation to contribute had to be annual or over the life of the plan, and (3) the phrase "which is qualified . . ." could be read to modify only "retirement plan" or could modify pension plan, profitsharing plan, and retirement plan.

The lower court found the provisions of the plan master document unambiguous. We agree. *See Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir.1993) (we review *de novo* whether ERISA plans are ambiguous). The phrase, "to which the company was contractually obligated to contribute," simply means the Company is legally obligated, pursuant to a contract, to contribute. This phrase is not reasonably

susceptible to a different interpretation. And as the lower court noted, the terms "pension" and "profit sharing," are not followed by the word "plan." As a result, the term "plan" relates to the words "pension," "profit sharing," and "retirement" making the qualifying phrase "plan which is ..." applicable to all three.

The next issue is whether, based on the unambiguous provisions of the plan master document, Bergt is eligible to participate in the retirement plan. The Committee conceded that Bergt was an employee and a former pilot, but decided that he was ineligible to participate in the retirement plan because he was a(1) member of a profit-sharing plan, (2) which was qualified by the IRS, and (3) to which the Company was contractually obligated to contribute.

Although the lower court did not determine whether Bergt was a member of a profit-sharing plan that was qualified by the IRS, it held the Company was not contractually obligated to contribute to it. Again, we agree with the lower court. The profit-sharing plan states, in relevant part:

> Employer Contributions: For each Year, the Employer shall contribute such amount as its Board of Directors shall deem be made on account of such Year ....

Although the profit-sharing plan uses the word "shall," it does not *require* the Company to contribute anything. For the Company to have been contractually obligated, it must have had a *legal duty* to contribute and someone must be entitled to a remedy if it does not. RESTATEMENT SECOND OF CONTRACTS § 1 (1981). In this case, the Company did not promise to a pay an objectively determinable amount each profitable year, which may have constituted a contractual obligation, *see Dierks v. Thompson*, 295 F.Supp. 1271,

1275–1276 (D.R.I.1969), but said it would pay an amount that it "shall deem be made." The appellee has failed to cite, and we have been unable to find, any case that would support interpreting this profit-sharing plan as creating a contractual obligation to contribute. As a result, no reasonable person could interpret the Company's discretion as a promise to pay. *See Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1194 (9th Cir.1996) (stating ERISA plans are interpreted as people of average intelligence would interpret them).

According to the plan master document, Bergt was clearly eligible to participate in the retirement plan because he was an employee, was a former pilot, and did not participate in another pension or profit-sharing plan to which the company was contractually obligated to contribute.[2]

*Summary Plan Document*

Although Bergt qualifies to participate in the retirement plan by the terms of the plan master document, the SPD unambiguously prevents him from participating. The SPD states, "if you are member of another Company-sponsored retirement or profit-sharing plan, you cannot be a member of this plan." Therefore, a conflict exists between the plan master document and the SPD.

*The Plan Master Document Controls*

■ The critical issue in this case is how to interpret an ERISA plan when the plan master document unambiguously qualifies an employee as a member of the retirement plan, but the SPD unambiguously excludes him. The lower court held that this created an ambiguity, and then looked to extrinsic evidence to resolve it. *See, e.g., Richardson*, 112 F.3d at 985 (9th Cir. 1997) ("Typically, however, when a plan is ambiguous, a court will examine extrinsic

---

**2.** Although the Committee and lower court did not focus on Bergt's participation in the ESOP, this would not bar him from participating in the retirement plan. Like the profit-sharing plan, the ESOP does not contractually obligate the Company to contribute to it.

evidence to determine the intent of the parties."); *Vizcaino v. Microsoft Corp.,* 97 F.3d 1187, 1194 (9th Cir.1996). The court, after considering the evidence, concluded the long-standing understanding of the parties was that an employee who participated in the profit-sharing plan could not be a member of the retirement plan.

The lower court correctly noted the contradiction between the plan master document and the SPD created an ambiguity as to whether Bergt was eligible to participate in the retirement plan. *See, e.g., Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.,* 753 F.2d 1512, 1518 (9th Cir.1985) ("Despite the ambiguity created by the existence of the two conflicting provisions . . . ."); *Burk v. Nance Petroleum Corp.,* 10 F.3d 539, 543 (8th Cir.1993) ("We agree that the presence of conflicting provisions is apt to render a contract ambiguous."). The district court's consideration of extrinsic evidence to resolve the conflict, however, was erroneous. In this case, we are not dealing with an ambiguous word or phrase, or conflicting provisions in the same document, as we were in *Vizcaino* and *Richardson,* but with a substantially more egregious ambiguity arising from an inconsistency between the plan master document and plan summary.

The other courts that have encountered ERISA plans where the plan master document conflicted with the SPD did not consider extrinsic evidence of the parties' intent to resolve the inconsistency. *See, e.g., Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1518–19 (10th Cir.1996); *Hansen,* 940 F.2d at 981–82; *Heidgerd v. Olin Corp.,* 906 F.2d 903, 907–908 (2d Cir.1990); *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136–37 (6th Cir.1988); *McKnight v. Southern Life & Health Ins. Co.,* 758 F.2d 1566, 1570–71 (11th Cir.1985). In these cases, the SPD conflicted with, and was more favorable to the employee, than the plan master document. Instead of relying on extrinsic evidence, however, these courts held that it would be unfair to have the employees bear the burden of a conflicting SPD and plan master document and, thus, decided that the provision *more favorable* to the employee controlled. *Chiles,* 95 F.3d at 1518; *Hansen,* 940 F.2d at 982; *Heidgerd,* 906 F.2d at 907–08; *Edwards,* 851 F.2d at 136–37; *McKnight,* 758 F.2d at 1570–71.

■ We follow this same reasoning to conclude that when the plan master document is more favorable to the employee than the SPD, and unambiguously allows for eligibility of an employee, it controls, despite contrary unambiguous provisions in the SPD. The plan master document is the main document that specifies the terms of the plan, and employees should be entitled to rely on its unambiguous provisions. The SPD, on the other hand, should simply summarize the relevant portions of the plan master document. Specifically, we adopt the reasoning of the Fifth Circuit, which stated:

> Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Accuracy is not a lot to ask.

*Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991). Furthermore, the law should provide as strong an incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master documents, a relatively simple task. *Id.; see generally Barnes v. Independent Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan,* 64 F.3d

1389, 1393 (9th Cir.1995) ("We must construe ambiguities in 'an ERISA plan against the drafter. . . .' "").[3]

### III. Conclusion

**In this case, the unambiguous provisions of the plan** master document control. As a result, the Committee abused its discretion by refusing to provide Bergt benefits under the retirement plan. *See Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (an error of law is an abuse of discretion). Similarly, the lower court committed legal error when it granted summary judgment in favor of the Committee and denied Bergt's summary judgment motion. We reverse the ruling of the lower court and instruct it to enter judgment in favor of the appellant.

REVERSED.

---

**3.** We note that the affirmative defenses of fraud and estoppel are available to plan administrators against employees seeking benefits. These issues were not addressed below nor raised on appeal and, therefore, are not considered.