**David J. RODOLFF, an individual, Plaintiff,**

**v.**

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a Tennessee corporation, Northrop Grumman Corporation Group Voluntary Accidental Death and Dismemberment Plan for Employees of Northrop Grumman Corporation, a group welfare benefits plan under ERISA and Does 1 through 10, inclusive, Defendants.**

**No. 01–CV–0768 H(AJB).**

United States District Court, S.D. California.

March 12, 2003.

Thomas M Monson, Miller Monson Peshel Polacek and Hoshaw, San Diego, CA, for David J Rodolff, plaintiff.

William B Reilly, Rimac and Martin, San Francisco, CA, for Provident Life and Accident Insurance Company.

Joseph Marion Rimac, Rimac and Martin, San Francisco, CA, for Northrop Grumman Corporation Group Voluntary Accidental Death and Dismemberment Plan for Employees of Northrop Grumman Corporation.

**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION [Docket No. 92]; (2) DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Docket No. 15]; (3) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Docket No. 80]; and (4) DENYING DEFENDANTS' MOTION TO STRIKE [Docket No. 99]**

HUFF, Chief Judge.

On May 3, 2001, Plaintiff David J. Rodolff filed a complaint against Defendants Provident Life and Accident Insurance Company, Northrop Voluntary Accidental Death and Dismemberment Plan for Employees of Northrop Grumman Corporation, and Does 1 through 10 (collectively, "Provident" or "Defendants"), as a result of Provident's denial of benefits to Plaintiff under a group accidental death and dismemberment policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. On September 26, 2001, Defendants filed a motion for summary judgment. On April 5, 2002, the court issued an order determining that the decision of the administrator denying benefits should be reviewed under an abuse of discretion standard. Thereafter the court afforded the parties an opportunity to evaluate the case under the abuse of discretion standard, and ordered the parties to submit additional briefing on this issue. On January 27, 2003, Plaintiff filed a Motion for Reconsideration of the court's order of April 5, 2002 based on new law, asking the court to reconsider the standard of review for evaluating the administrator's denial of benefits. Pursuant to a scheduling order issued by the court on January 30, 2003, Defendants filed their opposition to the motion for reconsideration on March 3, 2003, and Plaintiff filed his reply on March 10, 2003. After considering the papers filed by both parties, the Court deems this matter appropriate for decision without oral argument under Local Rule 7.1(d)(1). For the reasons discussed below, the court grants Plaintiff's motion for reconsideration and holds that the denial of benefits should be reviewed under a *de novo* standard.

## I. BACKGROUND

Plaintiff was employed by Northrop Grumman Corporation ("Northrop") and received from Northrop, among other benefits, Accidental Death and Dismemberment ("AD & D") coverage. Plaintiff lived with his wife Diane Rodolff in Norco, California, until her death on May 4, 1997. The coroner's report lists Mrs. Rodolff's cause of death as an adverse synergistic reaction to multiple drugs, and adds that hypertrophic cardiomyopathy was a contributing factor. (PROV-00031) The coroner classified Mrs. Rodolff's death as an accident. (*Id.*)

Plaintiff, through his employer, submitted a claim for accidental death benefits under the group AD & D Policy ("Policy") issued by Provident on January 12, 1998. The plan designated Northrop as the Plan Administrator and Provident as the Claims Administrator. A.C. Newman Insurance Correspondents Inc., an independent administrator, actually reviewed claims submitted to Provident. On June 10, 1998, A.C. Newman notified Plaintiff that it would require a 90 day extension to process his claim. On September 9, 1998, A.C. Newman again notified Plaintiff that it would require an additional 30 day extension.

On October 10, 1998, nine months after receipt of the claim, A.C. Newman notified Plaintiff that his claim was denied. (PROV–00045–48) Acting through an attorney, Plaintiff appealed the denial on December 7, 1998. On February 8, 1999, A.C. Newman sent a notice to Plaintiff stating that it would require a 60 day extension of time to process the appeal. On April 7, 1999, A.C. Newman again rejected Plaintiff's claim because it concluded that the natural progression of underlying disease factors, rather than an accident, caused Mrs. Rodolff's death. (PROV–00118). The denial letter of April 7, 1999, stated that A.C. Newman would allow Plaintiff to comment on Dr. Reynolds' report or supply additional information. Plaintiff did not submit any further documentation to A.C. Newman, but instead filed this suit on May 3, 2001.

## II. LEGAL STANDARD

A motion for reconsideration "is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). It is within the discretion of the district courts to grant or deny reconsideration. *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir.1970).

## III. DISCUSSION

In an order dated April 5, 2002, the court determined that the decision of the administrator A.C. Newman denying benefits should be reviewed under an abuse of discretion standard. Plaintiff has asked the court to reconsider its holding in light of two intervening decisions of the Ninth Circuit, *Jebian v. Hewlett–Packard Co. Employee Benefits Organization Income Protection Plan*, 310 F.3d 1173 (9th Cir. 2002), and *Bergt v. Retirement Plan for Pilots Employed By Markair, Inc.*, 293 F.3d 1139 (9th Cir.2002). Both of these cases issued after the court's decision regarding the appropriate standard of review. In light of the court's obligation to follow the law articulated by the Ninth Circuit, the court grants Plaintiff's motion for reconsideration in order to consider the impact of these cases on the appropriate standard of review to apply in this case. For the reasons discussed below, the court concludes that in light of the Ninth Circuit's holding in *Jebian*, the court should review the denial of benefits under a *de novo* standard of review.

In *Jebian*, the Ninth Circuit addressed as a matter of first impression "whether a plan administrator's decision, otherwise within the administrator's discretion, can be accorded judicial deference when the purported final, discretionary decision is not made until after the claim is, according to both the terms of the plan and the Department of Labor (DOL) regulations, already automatically deemed denied on review." *Jebian*, 310 F.3d at 1177. The claimant in *Jebian* sent a letter appealing his plan administrator's initial denial of

benefits on November 11, 1998. *Id.* One hundred and nineteen days later, on March 15, 1999, the plan administrator wrote a letter to the claimant addressing some issues raised in the appeal, but also leaving the appeal pending so that it could consider additional medical records that had not yet been received. *Id.* at 1176. The administrator did not issue a final decision denying the appeal until November 5, 1999, one week after the claimant filed a complaint in district court. *Id.*

The plan in *Jebian* contained an explicit grant of discretionary authority to the plan administrator so that, under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), a court would generally review the administrator's decision for an abuse of discretion. However, both the plan itself and regulations promulgated by the DOL governing ERISA plans contained time limits for an appeal. Specifically, some written notice was required within sixty days. The notice could either be the decision itself, or it could simply be a notification that an additional sixty days would be required to process the appeal. *Jebian,* 310 F.3d at 1177–78. Furthermore, both the plan and the regulations also required that the administrator render a final decision within 120 days. *Id.* at 1178. The administrator in *Jebian* missed both of the applicable deadlines, *i.e.* it did not provide written notification within sixty days, and it also did not render a decision within 120 days. The plan and the regulations provided that if no notice was provided within the time limits, the claim was deemed to have been denied. *Id.* at 1177–78. The Ninth Circuit held that the plan and the regulations established a set time within which the administrator must exercise its discretion, and that "decisions made outside the boundaries of conferred discretion are not exercises of discretion," and therefore should be reviewed under a *de novo* standard. *Id.* at 1178.

Jebian establishes that the administrator must act within the boundaries of discretion established by the plan documents and by regulation. Further, it holds that the time limits set by the plan and the regulations place real limitations on the discretion of the claims administrator. Therefore, under *Jebian,* courts do not defer to decisions rendered after a claim has been deemed denied by operation of the time limitations. In this case, Plaintiff argues that both the original denial and the subsequent decision on appeal were rendered outside the required time limits and that, therefore, the court must review the denial of benefits *de novo.*

With respect to the initial denial of benefits, A.C. Newman did not act within the time limits established by the plan and the governing regulations. The Summary Plan Description ("SPD") sets forth the following time limitations for issuing claim denials:

> If a claim is denied, you will receive written notification of the reason or reasons for the denial. The notice will include specific references to pertinent plan provisions on which the denial is based an a description of any additional information needed, as well as instructions to be followed if you wish to appeal the denial. The notice will generally be sent to you within 90 days of the date your claim is received.
>
> In special situations, an extension for an additional 90 days may be required to process the claim. In such a case, notice of an extension will be furnished within the original 90–day period and a notice to pay or deny the benefit will be mailed within 180 days of filing the claim. However, if neither a decision nor an extension notice is received within 180 days of filing a claim, you can assume that the claim for benefit [sic] has been denied.

(Declaration of David Rodolff, Exhibit A at 120.) Thus, according to the plan, within ninety days of submitting a claim, the claimant should receive either a letter denying benefits or a notice that a ninety day extension of time will be taken. The regulations governing the ERISA plan at issue are even more explicit.[1] Subsection (e) of 29 C.F.R. § 2560.503–1, the regulation governing notification of a denial of benefits, states:

> (1) If a claim is wholly or partially denied, notice of the decision, meeting the requirements of paragraph (f) of this section, shall be furnished to the claimant within a reasonable period of time after receipt of the claim by the plan.
>
> (2) If notice of the denial of a claim is not furnished in accordance with paragraph (e)(1) of this section within a reasonable period of time, the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage described in paragraph (g) of this section.
>
> (3) For purposes of paragraphs (e)(1) and (2), of this section, a period of time will be deemed to be unreasonable if it exceeds 90 days after receipt of the claim by the plan, unless special circumstances require a extension of time for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90–day period. In no event shall such extension exceed a period of 90 days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the final decision.

29 C.F.R. § 2560.503–1(e) (1998). Thus, under the applicable regulations, the claims administrator must notify the claimant of a denial within a reasonable period of time, or the claim will be "deemed denied," *id.* § 2560.503–1(e)(2), which results in *de novo* review of the claim denial under *Jebian.* Furthermore, the regulations define the outer boundaries of reasonableness. Absent an extension, notice of denial must be furnished within ninety days or the claim will be deemed denied. *Id.* § 2560.503–1(e)(3). If an extension of time is necessary, the claims administrator must notify the claimant of the extension "prior to the termination of the initial 90–day period." *Id.* Only one ninety day extension of time is permitted. *Id.* Therefore, if a proper extension notice has been provided, the administrator must notify the claimant of a denial within 180 days.

█ Plaintiff submitted his claim on January 12, 1998, (PROV–00025), and A.C. Newman received it on January 14, 1998. (Declaration of Charles S. Beech in support of Defendants' Motion for Summary Judgment at ¶ 3; PROV–00025) On June 10, 1998, one hundred and sixty days after submission of the claim, A.C. Newman notified Plaintiff that it required a ninety day extension to evaluate the claim. (PROV–00039) The notice stated that the written claims decision would be rendered "on or before Wednesday, September 9, 1998." (PROV–00040) On September 9, 1998, A.C. Newman requested a second extension of thirty days. On October 9, 1998, nine months after Plaintiff filed his claim, A.C. Newman sent a letter to Plaintiff denying the claim. (PROV–00045) Therefore, not only did A.C. Newman notify Plaintiff of its intent to take an extension well after the close of the ninety day window set by the regulations and the plan, but it also took an extension of greater than ninety days from the end of the original ninety

1. Because Plaintiff filed a claim in 1998, the applicable regulations are those issued by the DOL in the 1998 version of the Code of Federal Regulations.

day period. Furthermore, the decision itself took longer than the maximum time of 180 days set forth in the regulations. Thus, the decision to deny benefits was made "outside the boundaries of conferred discretion." Under *Jebian,* decisions made outside the scope of conferred discretion are not given deference by a reviewing court, and therefore the denial of benefits should be reviewed *de novo.*

█ Defendants argue that the claim was timely denied because the claims administrator did not receive Mrs. Rodolff's complete medical records until June 10, 1998, at the earliest. Thus, Defendants argue that Plaintiff's claim was not filed until June 1998. Under Defendants' theory, therefore, the initial letter of June 10, 1998, requesting a ninety day extension of time would be timely. However, it is not necessary to provide complete medical records in order to file a claim. According the SPD, filing a claim requires only that the claimant (1) "[o]btain a claim form from the Northrop Grumman Benefits Center;" and (2) "[s]end the completed form to the appropriate claim administrator." (Declaration of David Rodolff, Exhibit A at 116.) It is undisputed that Plaintiff complied with those requirements as of January 14, 1998. Indeed, A.C. Newman itself recognized that a claim had been filed on January 14, 1998, and differentiated the "claim" from the additional documentation that it felt it needed in order to evaluate the claim. In its letter of January 15, 1998, addressed to Northrop Grumman requesting the full medical records, A.C. Newman acknowledged that "[*w*]*e have currently received a claim* on the above mentioned insured [David Rodolff]. In order to further process this claim we will require complete medical records." (PROV–00033 (emphasis added).) In short, because Defendants received Plaintiff's claim on January 14, 1998, the ninety day clock for either denying the claim or notifying Plaintiff that it required a ninety day extension began running on January 14, 1998.

█ Defendants also argue that if the claim is deemed denied as of ninety (or 180) days after the filing date, then Plaintiff failed to timely appeal the deemed denial and therefore failed to exhaust his administrative remedies. According to the plan, appeals must be filed within sixty days of the denial of benefits. (Declaration of David Rodolff, Exhibit A at 121; PROV–0021) Plaintiff filed his appeal on December 8, 1998, fifty-nine days after A.C. Newman rendered its written denial of benefits. (PROV–00052) Defendants argue that if the claim was actually deemed denied earlier than October 8, 1998, then Plaintiff's appeal would be untimely. However, the regulations governing ERISA plans clearly state that the sixty day clock for filing an appeal begins to run upon receipt of a written denial letter:

> A plan may establish a limited period within which a claimant must file any request for review of a denied claim. Such time limits must be reasonable and related to the nature of the benefit which is the subject of the claim and to other attendant circumstances. *In no event may such a period expire less than 60 days after receipt by the claimant of written notification of denial of a claim.*

29 C.F.R. § 2560.503–1(g)(3) (1998) (emphasis added). Because Plaintiff filed his appeal within sixty days of his receipt of the written notification of denial, his appeal was timely filed.

Defendants also attempt to distinguish *Jebian* because that case involved an untimely decision by the claims administrator on appeal, rather than an untimely original denial of benefits decision. However, Defendants present no persuasive argument as to why the holding of *Jebian* should not apply with equal force to any attempt by a

claims administrator to exercise its discretion outside the boundaries set by the plan and by regulation.[2]

Because the court concludes that the Ninth Circuit's decision in *Jebian* establishes that *de novo* review should apply in this case, the court does not reach Plaintiff's other argument for *de novo* review based on *Bergt v. Retirement Plan for Pilots Employed By Markair, Inc.*, 293 F.3d 1139 (9th Cir.2002).

## IV. MOTIONS FOR SUMMARY JUDGMENT

The parties have submitted cross-motions for summary judgment addressing the merits of the denial. However, these motions are directed towards an abuse of discretion standard of review. In light of the court's holding that the standard of review should be *de novo*, the court denies without prejudice as premature Defendants' motion for summary judgment (Docket No. 15), and also denies without prejudice as premature Plaintiffs' motion for summary judgment (Docket No. 80).

## V. DEFENDANT'S EVIDENTIARY OBJECTIONS

Defendants have filed various objections to evidence presented by Plaintiff and have moved to strike the evidence that they deem objectionable. The court notes Defendants' objections. To the extent that the evidence is proper under the Federal Rules of Evidence and under the substantive law of ERISA, the court considered the evidence. To the extent the evidence is not proper, the court did not consider the evidence. The court denies Defendants' motion to strike without prejudice.

## VI. CONCLUSION

For the reasons discussed above, the court GRANTS Plaintiff's motion for reconsideration (Docket No. 92), and holds that the denial of benefits should be reviewed under a *de novo* standard. The court DENIES without prejudice Defendants' motion for summary judgment (Docket No. 15), DENIES without prejudice Plaintiff's motion for summary judgment (Docket No. 80), and DENIES Defendants' motion to strike (Docket No. 99). Because the court's decision regarding *de novo* review may impact the amount and type of discovery sought in this matter, the court further ORDERS that the parties consult expeditiously with Magistrate Judge Battaglia to arrive at a case management schedule and discovery plan.

IT IS SO ORDERED.

2. Plaintiff also argues that the decision on appeal from the original denial of benefits was untimely. Because the court holds that the untimeliness of the original denial of benefits triggers *de novo* review, the court declines to reach this alternative argument.