David A. VAZQUEZ, Jose R. Armas, and Samuel Moreno, Plaintiffs,

v.

CARGILL, INCORPORATED and Associated Companies Salaried Employees' Pension Plan: Cargill, Incorporated and Associated Companies Pension Plan for Production Employees, Defendants.

No. SACV 06–008 CJC (RNBx).

United States District Court,
C.D. California,
Southern Division.

Sept. 11, 2007.

Firouzeh Simab, Michael S. Ahmad, Michelle A. Reinglass, Michelle A. Reinglass Law Office, Laguna Hills, CA, for Plaintiffs.

Erich D. Schiefelbine and Joseph P. Busch, III, Gibson, Dunn and Crutcher, Irvine, CA, Gordon A. Letter and Sabrina A. Beldner, Littler Mendelson, Los Angeles, CA, Nancy L. Ober, Littler Mendelson, San Francisco, CA, for Defendants.

## MEMORANDUM OF DECISION

CARNEY, District Judge.

### INTRODUCTION

This ERISA trial involved a dispute over pension benefits owed to Plaintiffs David A. Vazquez, Jose R. Armas, and Samuel Moreno under the pension plans of

Defendants Cargill, Incorporated and Associated Companies Salaried Employees' Pension Plan ("Salaried Plan") and Cargill, Incorporated and Associated Companies Pension Plan for Production Employees ("Production Plan"). Plaintiffs are each retirees who worked for over 35 years at the same oil facility in Fullerton, California. This facility was owned and operated for many years by Hunt–Wesson until it was acquired by Cargill, Incorporated ("Cargill") in 1990. Plaintiffs contend that when Cargill acquired the Fullerton facility and employed them, it promised them that they would receive pension benefits for their years of service for both Hunt–Wesson and Cargill. Plaintiffs also contend that they and other employees were provided a summary plan description for the Production Plan indicating that they would receive pension benefits for all their years of service at the Fullerton facility. Defendants, on the other hand, deny that Plaintiffs are entitled to pension benefits for their years at Hunt–Wesson, relying on the Production Plan master document that expressly excludes years of service at a predecessor company from the calculation of pension benefits.

After considering all the evidence presented by the parties, as well as the arguments of their counsel, the Court finds in favor of Plaintiffs. If a conflict arises between an ERISA plan master document and a summary plan description more favorable to an employee, the summary plan description controls. In light of the wording of the summary plan description implying the Plaintiffs would receive pension benefits for all their years of service at the Fullerton facility, as well as the representations made to Plaintiffs by Cargill that were consistent with that implication, Plaintiffs are entitled to receive pension benefits for their years of service at the Fullerton facility beginning January 1, 1964.

## FINDINGS OF FACT

Plaintiffs each began working at the Fullerton facility when it was owned and operated by Hunt–Wesson; each was hired to continue working at the facility when it was acquired by Cargill in 1990; and each retired from working at the facility as a Cargill employee. David Vasquez began working at Hunt–Wesson on April 3, 1967 at a janitor. Mr. Vazquez earned a number of promotions over the course of his career, eventually becoming a supervisor and lead man at the facility just prior to its acquisition by Cargill. With no breaks in service, Mr. Vasquez worked at the Fullerton facility until he retired from Cargill on May 1, 2003. Jose Armas started working at Hunt–Wesson on March 24, 1969. Like Mr. Vasquez, Mr. Armas worked continuously at the Fullerton facility until his retirement from Cargill on August 1, 2004. Mr. Armas was hired as a pumper and eventually became familiar with operating each piece of machinery at the facility. Samuel Moreno began working at Hunt–Wesson on October 7, 1963 and retired from Cargill on October 1, 2005. Like Mr. Vazquez, Mr. Moreno was initially hired as a janitor. Through the course of his career he worked in a number of different departments and learned to operate numerous pieces of equipment. Mr. Vasquez, Mr. Armas and Mr. Moreno all speak English as their second language.

### 1. Representations by Cargill to Plaintiffs

Plaintiffs first learned of Cargill's impending acquisition of Hunt–Wesson in early 1990. While Plaintiffs received materials listing job openings at other companies, (Exh. 1) they chose to wait to seek new jobs until their employment with Hunt–Wesson concluded, believing they had saved up enough vacation time to be adequately compensated during the search

period. However, two weeks before the facility's scheduled closing date, Plaintiffs learned Cargill sought to retain them to work in the same facility doing the same work as they had done while employed by Hunt–Wesson.

In March 1990, prior to accepting Cargill's offer of employment, Plaintiffs attended a meeting held by Cargill to discuss the company's various benefit plans and its terms of employment. Plaintiffs each testified that during the meeting Cargill said that years worked at Hunt–Wesson would count for purposes of vacation days; that service at Hunt–Wesson would allow the employees to waive any waiting period before health, medical, dental and life insurance benefits commenced; and that, unlike Hunt–Wesson, Cargill would not offer employees sabbaticals. Cargill further stated that years of service accrued at Hunt–Wesson would apply to pension benefits for the purposes of vesting.[1] Plaintiffs each testified that they left this meeting with the strong belief that their years of service at Hunt–Wesson would count for purposes of calculating their pension benefit payments. Plaintiffs were given nothing in writing to take home and read. Plaintiffs relied on Cargill's representations when deciding to forego other job opportunities and accepted Cargill's offer of employment.

## 2. The Production Plan Documents

Shortly after Plaintiffs were hired to work for Cargill, and in accordance with ERISA, Cargill distributed the 1989 Production Plan Summary Plan Description (the "Production SPD") to Plaintiffs. Exh. 75.[2] The Production SPD describes two factors for determining pension benefit payments: eligibility, as determined by "Continuous Service,"[3] and benefit level, as determined by "Credited Service."[4]

"Credited Service," used to determine pension payment amounts, is defined as:

*For service prior to January 1, 1964:* Credited Service is the number of years from your seniority date as shown in the personnel records of Cargill to January 1, 1964, computed in completed 1/2 years. *No predecessor company employment counts.*

*For service from January 1, 1964, to December 31, 1975:* Credited Service is based on the following: [table describing years of Credited Service earned per number of compensated hours]. Credited Service is computed in completed 1/2 years.

*For service after January 1, 1976:* Credited Service, subject to the Break in Service Provisions, is based on the following: [table describing years of Credited Service earned per number of

1. Vesting referred to the principle that an employee had to accrue a certain number of years of service, normally five years at Cargill, before employment benefits became "vested" or guaranteed. For Plaintiffs, the implication of this statement is that their pension benefits would be guaranteed immediately; they were not required to work for five years at Cargill first.

2. While exhibit 75, the Production SPD, lists ACCO Feeds, Inc. as the relevant acquired company to which the SPD applied, Cargill's Industrial Relations representative, Felix Ricco, submitted a declaration, Exh. 162, confirming that the Production SPD was in fact

the same summary plan description that applied to eligible employees at the Fullerton, California facility acquired from Hunt–Wesson in 1990.

3. "Your eligibility for pension benefits is based upon your years of Continuous Service with Cargill or an Associated Company." Exh. 75–4. The parties do not dispute that Plaintiffs' service with Hunt–Wesson counts toward the computation of years of "Continuous Service" for determining eligibility.

4. "The benefit amount you earn will be determined in part by your years of Credited Service with Cargill." Exh. 75–5.

compensated hours]. Credited service is computed on a calendar year basis in completed one 1/4 years,

Exh. 75–5 (italics added). Credited Service is calculated by adding together the years served during each time period in light of that time period's particular formula.

The Production SPD is a summary of the 1976 Cargill Pension Plan for Production Employees (the "Production Master Plan"), the master plan document. Exh. 98. The Production Master Plan expressly states that employment with a predecessor company is excluded from years of service used to calculate pension benefits amounts:

> Credited service shall not include employment with any predecessor company except as provided in Exhibit 1 which is incorporated by reference.

Exh. 98, § 5(d). Exhibit 1 of the plan lists seven predecessor companies whose employees would receive credit for years served starting from either their start date with the predecessor company or another date as specified in the exhibit. Hunt–Wesson is not among these seven listed companies.

### 3. The Salaried Plan

In March 1999, Plaintiffs were converted from production employees to salaried employees. Cargill does not dispute that Plaintiffs were told that their benefits would either stay the same or improve under the Salaried Plan and that they would not lose any benefits. Plaintiffs' pension benefits, however, were governed by a new plan: the Salaried Plan. The Salaried Plan documents were the 1976

Cargill Pension Plan for Salaried Employees (the "Salaried Master Plan") (Exh. 144), and the 2001 Salaried Plan Summary Plan Description (the "Salaried SPD") (Exh. 51). Rather than using the term "Credited Service" like the Production Plan documents, the Salaried Plan refers to "Accredited Service." The Salaried Master Plan describes Accredited Service as to "include Participating Company service earned by Participant under any other Company sponsored or funded defined benefit plan prior to the Participant's eligibility for coverage under this Plan ..." Exh. 144–31. Cargill is a Participating Company under the Salaried Plan and Plaintiffs were participants in Cargill's Production Plan prior to their eligibility under the Salaried Plan. Plaintiffs' years of service prior to participating in the Salaried Plan therefore count towards determining their years of service under the Salaried Plan.

### 4. The Administrative Claim

On or about March 20, 2006, Plaintiffs, through their counsel, sent two letters to Cargill's Benefit Administration Department claiming additional pension benefits under the Salaried Plan.[5] Exhs. 100, 101. Robyn Polencheck, on behalf of the Salaried Plan, responded to Plaintiffs' claim in a letter dated April 20, 2006. Exh. 148. Ms. Polencheck's letter informed Plaintiffs that they were not entitled to receive pension benefits based on their years of service with Hunt–Wesson, only on their years of service with Cargill. Included with Ms. Polencheck's letter was

---

5. Plaintiffs did not make a separate claim under the Production Plan. Defendants, however, did not raise this as a defense. For that reason, Defendants have waived the exhaustion of remedies requirement as it pertains to the Production Plan. In addition, this Court has the discretion to waive this requirement when exhaustion would be futile. *Horan v.*

*Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir.1991). In light of the Salaried Plan denial and the common administration of Defendants' plans, the Court finds that exhaustion of remedies as to Plaintiffs' claim for additional pension benefits under the Production Plan would be futile.

a copy of the Salaried Master Plan, the Salaried SPD and the pension calculation worksheets Plaintiffs received shortly before retirement. Ms. Polencheck did not include Production Plan documents in her reply because, according to her testimony, she did not consider the Production Plan when determining Plaintiffs' benefit payment amounts.

Soon after their claims for additional benefits were denied, Plaintiffs filed this action under the Employee Retirement Income Security Act (ERISA) against Cargill's Production and Salaried Plans. Plaintiffs seek a stipulated damages award for pension benefits based on their years of Credited Service at Hunt–Wesson combined with their years of Accredited Service at Cargill.

## ANALYSIS

■■■ The Court reviews the denial of Plaintiffs' claim for pension benefits based on their years of service at Hunt–Wesson *de novo.* When an ERISA plan document does not confer discretionary authority on the administrator to interpret the plan document, the Court must review any denial of benefits *de novo. Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 967 (9th Cir.2006). As the controlling issues before the Court is whether Plaintiffs' years of service at Hunt–Wesson were credited under the Production Plan, and the Production Plan does not confer discretionary authority upon the administrator, the denial of benefits is reviewed *de novo.*[6]

6. Unlike the Production Plan, the Salaried Plan—the plan Plaintiffs retired under—confers discretionary authority on the administrator to interpret the plan documents. *See* Exh. 144–80. When the administrator possesses discretionary authority, denial of benefits is reviewed for abuse of discretion. *Abatie,* 458 F.3d at 963. The Court does not believe the administrator here should have discretionary authority to interpret the Production Plan

ERISA requires that plan fiduciaries act "in accordance with the documents and instruments governing the plan ..." 29 U.S.C. § 1104(a)(1)(D) (1996). The primary document governing an employee benefit plan is the master plan document. The master plan document sets forth the terms and conditions of the employee benefit plan in explicit detail. *See Geddes v. United Staffing Alliance Employee Med. Plan,* 469 F.3d 919, 922 (10th Cir.2006).

■■■ The terms and conditions set forth in the master plan are summarized for employees in the benefit plan's summary plan description. *Pisciotta v. Teledyne Indus.,* 91 F.3d 1326, 1329 (9th Cir. 1996). A summary plan description is part of an ERISA plan under Ninth Circuit law. *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1143 (9th Cir.2002); *see also Chiles v. Ceridian,* 95 F.3d 1505, 1511 (10th Cir.1996); *Alday v. Container Corp. of Am.,* 906 F.2d 660, 665 (11th Cir.1990). "The SPD is the statutorily established means of informing participants of the terms of the plan and its benefits." *Pisciotta,* 91 F.3d at 1329. Section 1022 of Title 29 of the U.S.Code mandates that participants and beneficiaries in any employment benefit plan be furnished with a summary plan description that is "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their

documents by virtue of having discretionary authority to interpret the Salaried Plan documents. In any event, since the administrator never interpreted both the Production SPD and the Production Master Plan when determining Plaintiffs' benefit levels, the Court must interpret the provisions of the Production Plan *de novo* to determine Plaintiffs' years of service under that plan.

rights and obligations under the plan," 29 U.S.C. § 1022(a) (1996). This is consistent with ERISA's purpose "to promote the interest of employees and their beneficiaries in employee benefit plans." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also* 29 U.S.C. § 1001(b) (1997) (declaring that the policy of ERISA is to protect benefit plan participants and their beneficiaries by enacting standards of "conduct, responsibility and operation for fiduciaries of employee benefit plans. . . .")

### 1. Determining Plaintiffs' Years of Credited Service

The Production Master Plan explicitly excludes predecessor company employment for purposes of computing Plaintiffs' years of Credited Service:

> Credited service shall not include employment with any predecessor company except as provided in Exhibit 1 which is incorporated by reference.

Ex. 98, § 5(d). Because Hunt–Wesson is not an exempted predecessor company under Exhibit 1, Plaintiffs' employment at Hunt–Wesson does not count toward their years of Credited Service under the Production Master Plan.

■ However, under the Production SPD, the Court concludes that Plaintiffs' employment at Hunt–Wesson after January 1, 1964 does count for purposes of determining their years of Credited Service under the Production SPD. This conclusion is supported by the plain language of the Production SPD, ERISA interpretative principles and the policy underlying ERISA.

There is a significant material difference between the Production SPD's description of Credited Services prior to January 1, 1964 and Credited Service after January 1, 1964. The Production SPD explicitly excludes "predecessor company employment" from the calculation of years of Credited Service prior to January 1, 1964. Ex. 75–5. This exclusion is not found in the method of computing years of Credited Service "from January 1, 1964, to December 31, 1975" or "for service after January 1, 1976." *Id.* Because the Production Plan excluded "predecessor company employment" for only one subsection of the Credited Service calculation provisions, it cannot be concluded that "predecessor company employment" was likewise excluded from the other two subsections. An employee may reasonably interpret the Credited Service section to exclude "predecessor company employment" only for service prior to January 1, 1964. Had the drafters intended the interpretation urged by Defendants, the exclusion could have been placed at a location that indicated applicability to the entire provision, such as above the computation subsections, or by placing the exclusion language in each subsection individually.

■ This reading of the Production SPD is consistent with principles of construction applicable to ERISA plans. *See Barnes v. Indep. Auto. Dealers of Calif. Health & Welfare Benefit Plan,* 64 F.3d 1389, 1393 (9th Cir.1995) (applying *expressio unius est exclusio alterius* to interpret the right of subrogation under an ERISA benefit plan). Under the maxim, *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—the language excluding "predecessor company employment" in one section cannot be read into the subsequent subsections. The drafter, Cargill, has expressed an ability to exclude particular years of service from the first subsection, and it can

therefore be assumed that Cargill acted "intentionally and purposefully in the disparate ... exclusion." *See Madrid v. Gomez*, 150 F.3d 1030, 1037 (9th Cir.1998) (citing *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)) (applying *expressio unius* to determine Congressional intent) (*withdrawn on other grounds*, 190 F.3d 990 (1999)). Defendants argue that maxims of construction cannot be used to interpret an ambiguous summary plan description when a plan grants a fiduciary explicit discretion to interpret the plan. The Production Plan documents, however, do not reserve discretion for any plan fiduciary or administrator to interpret or construe the plan. Furthermore, the Ninth Circuit has stated only that the principle of construction, *contra proferentum*, reading ambiguities against the drafter of a contract, cannot apply when a fiduciary is granted discretion to interpret an ERISA plan. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 625 (9th Cir.2007).

The Court's conclusion is also consistent with the principle underlying ERISA of protecting "the interest of employees and their beneficiaries in employee benefit plans." *Firestone Tire & Rubber Co.*, 489 U.S. at 113, 109 S.Ct. 948. One means of protecting the employee's interest is the statutory requirement that the summary plan description is written "in a manner calculated to be understood by the average plan participant ..." § 1022(a). If experienced plan administrators and ERISA lawyers grapple over the interpretation of the Credited Service language in the Production SPD, employees untrained in interpreting benefit plans cannot be expected to come to a clear interpretation of such language.[7] This concern is particularly strong here as Plaintiffs are blue-collar factory workers who speak English as their second language. While that fact does not militate for any particular result, it proves that a complex interpretation of the Production SPD's language and organization is not a reading that is "understood by the average plan participant." *Id.* The Court's construction, on the other hand, is an interpretation of that language most likely to be embraced by the average plan participant such as Plaintiffs.

Moreover, this conclusion is consistent with the representations made by Cargill representatives to Plaintiffs during the pre-hiring meeting. During the March 1990 meeting. Plaintiffs were told that their years of service at Hunt–Wesson would count toward a number of their benefits: vacation days, eligibility for immediate health, medical, dental and life insurance benefits, and the vesting period for pension benefits. Plaintiffs each testified that they left this meeting with the strong impression that their years of service with Hunt–Wesson would count toward determining their pension benefit amount. Defendants, in a position of superior power, knowledge and experience, did not give Plaintiffs any documents or summaries about the promised benefits to con-

---

**7.** This fact is conveniently illustrated in an email exchange between Plaintiffs' supervisor, Nick Ladin, and Diane Jordan, Cargill's Human Resources representative. Mr. Ladin inquired how "years of service" was calculated for pension purposes. He said, "we have employees that were once Hunt Wesson [sic] employees and Cargill took over ... Does the Years of Service go back to CONTINOUS SERVE [sic] DATE or ORIGINAL HIRE DATE [for pension program calculations]...." Jordan replied, "It's the continuous service date." Ex. 14–1. This email was distributed among Plaintiffs, further substantiating their belief that their employment at Hunt–Wesson would count toward their pension payments.

tradict Plaintiffs' understanding of the meeting. Given the representations made by Cargill regarding the benefits available to Hunt–Wesson employees, the Plaintiffs', and this Court's, interpretation of the Production SPD is both justifiable and reasonable.

### 2. Conflict Between the Production SPD and the Production Master Plan

■■■■■ The Production Master Plan, which *excludes* all predecessor company employment, is in direct conflict with the Production SPD, which *includes* predecessor company employment after January 1, 1964. When a benefit plan's summary plan description conflicts with the master plan document, the document more favorable to the employee controls. *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002) (concluding the document more favorable to the employee governs even if that document is the master plan). The *Bergt* court reasoned:

> [A]ny burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document.

*Id.* at 1145. Placing this burden on employers "provide[s] as strong an incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master documents, a relatively simple task." *Id.; see also Barnes v. Indep. Auto. Dealers Ass'n of Calif. Health & Welfare Benefit Plan*, 64 F.3d

1389, 1393 (9th Cir.1995) (stating "we must construe ambiguities in an ERISA plan against the drafter ...").

In a number of courts, this rule has meant that a summary plan description more favorable to the employee has controlled. *See, e.g., Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 981 (5th Cir.1991); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1518 (10th Cir.1996); *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990); *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988). For example, in *Hansen v. Continental Insurance Co.*, the parties disputed the amount plaintiff was entitled to under a group accidental death and dismemberment policy. 940 F.2d at 979–80. The summary plan description provided that plaintiff was entitled to "40% of the employee's benefit and an amount equal to 10% of the employee's benefit for each eligible child," totaling $120,000. *Id.* at 980. The master plan, however, provided that plaintiff "would recover only 40% of the principle sum or $80,000." *Id.* The court rejected defendant's argument that when the summary plan description is ambiguous or in conflict with the master plan, the master plan should govern. *Id.* at 982. If the master plan controlled, the Court wrote, "the summary would not need to be accurate or comprehensive The result would be that before a participant in the plan could make any use of the summary, she would have to compare the summary to the policy to make sure the summary was unambiguous, accurate and not in conflict with the policy." *Id.* at 981. The *Hansen* court concluded that the summary plan description must control because "any other rule would be ... grossly unfair to employees and would undermine ERISA's requirement of an accurate and comprehensive summary," *Id.* at 982.

■ Here, there is a direct conflict between the Production Master Plan, which excludes predecessor company employment, and the Production SPD, which includes predecessor company employment after January 1, 1964. Given this conflict, the Production SPD controls because it is the document more favorable to the employee. *See Bergt*, 293 F.3d at 1145; *see also Hansen*, 940 F.2d at 981. To hold otherwise would be shift the "burden of uncertainty created by careless and inaccurate drafting ... on[to] the individual employee" instead of Defendants, experienced participants in benefit plan administration. *See Bergt*, 293 F.3d at 1145. The years of service Plaintiffs accrued as employees of Hunt–Wesson after January 1, 1964 therefore count toward the computation of their years of Credited Service under the Production SPD. Having made that determination, the Salaried Plan is bound to credit those years of service toward the calculation of Plaintiffs' Accredited Service under the Salaried Plan.

## CONCLUSION

Plaintiffs are entitled to pension benefit payments for their years of service at the Fullerton facility beginning January 1, 1964. The Court adopts the parties' stipulated damages amounts and orders Defendants to make payments to the Plaintiffs in accordance with that stipulation.