**Lisa A. McHENRY, Plaintiff,**

**v.**

**PACIFICSOURCE HEALTH PLANS, and The Metro Area Collection Service, Inc. Group Health/Dental Plan, Defendants.**

**No. CV–08–562–ST.**

United States District Court,
D. Oregon.

March 5, 2009.

John C. Shaw, Megan E. Glor, Megan E. Glor Attorneys at Law, Nena Cook, Sussman Shank, LLP, Portland, OR, for Plaintiff.

Richard K. Hansen, Schwabe Williamson & Wyatt, PC, Portland, OR, for Defendants.

OPINION AND ORDER

STEWART, United States Magistrate Judge.

**INTRODUCTION**

Plaintiff, Lisa A. McHenry ("McHenry"), is a participant in the Metro Area Collection Service, Inc. ("Metro Area Collection") Group Health/Dental Plan ("the Plan"), which is insured by defendant PacificSource Health Plan ("PacificSource"). She brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §§ 1001–1461, to obtain coverage for Applied Behavioral Analysis ("ABA") therapy received by her minor son, J.M., to treat his autism beginning January 2007.

This court has jurisdiction under 29 USC § 1132(c). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

McHenry has filed a Motion for Partial Summary Judgment (docket #13) to resolve what standard of review applies to PacificSource's decision to deny her claim. McHenry contends that judicial review should be *de novo* because the Plan does not unambiguously grant PacificSource the discretionary authority to interpret terms and make benefits decisions. For the reasons stated below, McHenry's motion is granted.

**LEGAL STANDARD**

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to a judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.,* 180 F.3d 1047, 1054 (9th Cir.1999) (citation omitted). A

" '*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' " does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989) (emphasis in original) (citation omitted).

■ The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id.* (citation omitted).

### UNDISPUTED FACTS

At all relevant times, McHenry was an employee of Metro Area Collection which is insured by PacificSource. Her son, J.M., is an eligible dependent as defined in the Plan. The Plan is a fully-insured employee welfare benefits plan specifically covered under ERISA, 29 USC §§ 1002(1) and 1003(a). Metro Area Collection is the sponsor of the Plan within the meaning of ERISA, 29 USC § 1002(16)(B), and also is the administrator of the Plan under 29 USC § 1002(16)(A). The Plan documents include the Group Policy of Medical, Surgical, and Hospital Insurance ("Policy") and the Member Benefit Handbook, also referred to as the Summary Plan Description ("SPD").

The SPD expressly gives PacificSource the "discretionary authority to determine eligibility for benefits under the plan and to interpret the terms of the plan." GraVette Aff., Ex. 2, p. 53. The Policy, however, does not contain this same language. The SPD also states that in the event of "a conflict between this benefit handbook [SPD] and the group health contract [Policy], this plan will pay benefits according to the contract [Policy] language." McHenry Aff. ¶ 4 and Ex. 2, p. 1.

McHenry's son, J.M., was diagnosed with autism in May 2006. In November 2006, McHenry submitted a request through J.M.'s pediatrician for coverage under the Plan for 25 to 40 hours per week of ABA therapy for J.M.

In January 2007, J.M. began receiving approximately 20 hours per week of ABA therapy. In June 2007, PacificSource notified McHenry of its decision to deny coverage for that ABA therapy because: (1) it constitutes academic or social skills training which is excluded from coverage under the Plan, and (2) the ABA provider was not an eligible provider under the Plan. On June 29, 2007, McHenry submitted to PacificSource a written grievance of their denial of her claim for coverage. PacificSource upheld its denial of coverage by letters dated August 2 and 28, 2007. Glor Decl., Exs. A & B. McHenry appealed that denial to the PacificSource Membership Rights Panel which upheld the denial on November 21, 2007. *Id.*, Ex. D. McHenry then submitted a written request to the Independent Medical Expert Consulting Services ("IMEDECS") to review PacificSource's denial of her claim. IMEDECS sent McHenry a letter dated December 12, 2007, denying her request for review. *Id.*, Ex. E. McHenry then filed this lawsuit.

### ANALYSIS

McHenry contends that the standard of review should be *de novo* because: (1) the SPD is not a valid amendment to the Policy; and (2) even if a conflict exists between the Policy and the SPD, the Policy controls. PacificSource responds that the SPD is enforceable and controls over a silent Policy, and, in any event, no conflict exists between the Policy and SPD. Accordingly, PacificSource urges the court to employ the arbitrary and capricious standard of review.

## I. *Legal Standards*

ERISA does not specify a standard of review. Filling that statutory gap, courts apply either a *de novo* or an arbitrary and capricious standard of review, depending on whether the administrator has the discretion to interpret the terms of the plan or make benefits determinations. A denial of benefits is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962–63 (9th Cir.2006) *(en banc)*. However, if the plan vests the administrator with such discretionary authority, then the court reviews the plan administrator's decision only for an abuse of discretion. *Firestone Tire & Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948. The term "arbitrary and capricious" also describes this deferential standard of review. *See Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 (9th Cir.1990).

No deference to the plan administrator is given under *de novo* review. In contrast, under the arbitrary and capricious standard of review, an administrator's decision "is not arbitrary unless it is 'not grounded on any reasonable basis.'" *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1417 (9th Cir.1991) (emphasis in original), quoting *Oster v. Barco of Cal. Employees' Ret. Plan*, 869 F.2d 1215, 1219 (9th Cir.1988). Also, an arbitrary and capricious standard of review limits the court's consideration to the evidence reviewed by the plan administrator at the time the eligibility decision was made. *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F.3d 1310, 1316 (9th Cir.1994), *cert. denied* 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 (9th Cir.1993).

Which standard of review applies depends primarily upon the terms of the plan. A plan confers discretion when it "includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1325 (9th Cir.1992), *cert. denied* 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993). The grant of discretion "should be clear: unless plan documents unambiguously say in sum or substance that the Plan Administrator or fiduciary has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the standard of review will be *de novo*." *Sandy v. Reliance Standard Life. Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir.2000). The authority to determine eligibility for benefits "inherently confers discretion" upon the plan administrator. *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996).

## II. *Whether the SPD Amended the Policy*

McHenry argues that the SPD is not binding because it was an improper amendment to the Plan. In order to amend the Plan, PacificSource must follow an established protocol. McHenry Aff. ¶ 4 and Ex. 2, p. 13. The amendment procedure requires a 30–day notice to the employer that the policy will be changed. *Id.*, pp. 5–7. The amendment then is accepted either by paying the premium after receiving notice or by failing to reject the changes within 15 days before the modification. GraVette Aff., Ex. 1, p. 21.

The SPD relied on by McHenry became effective November 1, 2007, after adoption of the Plan. McHenry Aff., Ex. 1. However, another SPD effective November 1, 2004, was issued with the initial purchase of the Plan by Metro Area Collection. GraVette Aff., ¶ 4 & Ex. 2. That earlier

SPD contained the same grant of discretionary authority to PacificSource as the later SPD. As a result, any failure to follow the proper amendment protocol for the later SPD is not germane to this court's analysis.

### III. Whether the Policy and the SPD Conflict

McHenry argues that the Policy and the SPD materially conflict because the SPD, unlike the Policy, contains a sentence granting PacificSource discretionary authority. Therefore, McHenry urges this court to consider only the Policy when determining the proper standard of review.

 When interpreting an ERISA plan, the plan documents must be construed as a whole. *See Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1143 (9th Cir.2002) (citations omitted). The SPD is part of the plan documents. *Id.,* citing *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1511 (10th Cir.1996). Since a court must consider both the terms in the policy and the SPD, an issue arises when the two documents contain conflicting provisions. If the plan documents contain a "material conflict," then a court may focus on one plan document instead of construing the documents as a whole. *Bergt,* 293 F.3d at 1143. The document more favorable to the participant controls. *Id.,* citing *Chiles,* 95 F.3d at 1518.

Here the SPD contains language clearly granting PacificSource discretion, while the Policy does not. The parties dispute whether this difference in language creates a material conflict. For two reasons, PacificSource maintains that no conflict exists, such that the SPD controls. First, it argues that silence in the Policy does not contradict the express terms of the SPD. Alternatively, it posits that the Policy's numerous grants of discretion, in sum and substance, put participants on notice that

PacificSource had discretion to interpret the terms of the Plan or make benefits determinations. This court rejects both arguments.

### A. *When the Policy is Silent*

 PacificSource contends that the Ninth Circuit finds no material conflict when one document merely omits a provision found in the other document. As support for that contention, it cites only an unpublished case, *Helm v. Sun Life Assurance of Canada, Inc.,* 34 Fed.Appx. 328 (9th Cir.2002), which cites *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1321 (9th Cir.1995), *overruled on other grounds, Abatie,* 458 F.3d at 966–67. Because *Helm* is unpublished, it "is not precedent and may not be relied upon." *Green v. Sun Life Assurance Co. of Canada,* 383 F.Supp.2d 1224, 1228 (C.D.Cal.2005). Furthermore, *Atwood* is not on point; it held only that the SPD controls only when the SPD fails to adequately explain how benefits could be lost or diminished and differs materially from the term of the plan. *Atwood,* 45 F.3d at 1321.

More importantly, in both of those cases, the silent document was the SPD, not the policy. *Helm,* 34 Fed.Appx. at 332; *Atwood,* 45 F.3d at 1321. When the situation is reversed, as here, with the Policy saying nothing about the standard of review and the SPD containing discretionary language, courts do find a material conflict. As recently explained by one court:

> [S]ilence on a topic in an SPD does not necessarily imply a conflict; in fact, courts have concluded the opposite. *See Jensen v. SIPCO, Inc.,* 38 F.3d 945, 952 (8th Cir.1994) (holding that silence in the SPD on the issue of whether benefits have vested does not override specific plan provisions); *Washington v. Standard Ins. Co.,* 2004 U.S. Dist LEXIS 22975 at *34 (N.D.Cal., July 27, 2004)

("Although the SPD does not include [the discretionary language], it contains no language to the contrary."). The cases that Plaintiff cites in support of her contention that silence *is* indicative of a conflict involve the reverse situation, *i.e.,* the discretionary language is in the SPD, but the policy is silent. *See Shaw v. Conn. Gen. Life Ins. Co.,* 353 F.3d 1276, 1284 (11th Cir.2003); *Reinertsen v. Paul Revere Life Ins. Co.,* 127 F.Supp.2d 1021, 1030 (N.D.Ill.2001) (stating that "unless the plan affirmatively grants discretion, then de novo review applies, even if the SPD provides otherwise."). The distinction is important because the policy is the contract between the plan administrator and the insurance company, while the SPD is a summary document for the benefit of the employees.

*Neathery v. Chevron Texaco Corp. Group Acc. Policy,* 2006 WL 4690902 *5 (S.D.Cal., July 31, 2006), (emphasis in original); *also see Spangberg v. The Pepsi Bottling Group Long Term Disability Plan,* 2006 WL 1529659, *10–11 (W.D.Wis., May 30, 2006); *Olson v. Comfort Systems USA Short Term Disability Plan,* 407 F.Supp.2d 995 (W.D.Wis.2005); *Wolff v. Continental Casualty Co.,* 2004 WL 2191579, *10–11 (N.D.Ill. Sept. 28, 2004).

That a silent policy creates no conflict with discretionary language in a SPD is based on the principle that the policy sets the terms of the relationship between the plan and the participants which the SPD cannot expand.

As a general matter, courts construe benefit plans in favor of beneficiaries and against plan administrators. If a participant relies on a provision in a summary that conflicts with the terms of a benefit plan, it is reasonable to hold the plan to the terms of its summary ... The present case presents the reverse situation: the provision in the summary favors the plan's administrator. In this

instance, holding that the language in the summary prevails over the silence in the plan would undercut one of the public policy goals underlying ERISA and harm the class of person the statute was intended to protect.

*Spangberg,* 2006 WL 1529659 at *11.

The Ninth Circuit has repeatedly held that when the plan documents conflict, the provision more favorable to the claimant controls. *See Bergt,* 293 F.3d at 1145–46. Because the SPD "should simply summarize the relevant portions of the plan master document ..., the law should provide as strong an incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master documents, a relatively simple task." *Id.* at 1145. Thus, this court concludes, as have most courts, that the SPD cannot secure deferential judicial review when the Policy itself is silent.

**B. Whether the Policy Grants Discretionary Authority**

 In the alternative, Pacific-Source argues that the Policy and the SPD do not materially conflict since both grant discretionary authority to the plan administrator. No magic words need appear in the plan document to confer discretion. *See Abatie,* 458 F.3d at 963 (citations omitted). However, the language granting discretion must be unambiguous "in sum or substance." *Sandy,* 222 F.3d at 1207. The Ninth Circuit has one of the most stringent standards to determine whether language unambiguously grants discretionary authority. Unlike some other circuits, it sees "great value in clarity." *Id.* at 1206. "The default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.,* 175 F.3d 1084,

1089 (9th Cir.1999) (en banc). An unambiguous grant of discretionary authority is one that is so clear it cannot be interpreted to have any other meaning. *Id.* at 1090. "Neither the parties nor the courts should have to divine whether discretion is conferred. It either is, in so many words, or it isn't. For sure, there is no magic to the words 'discretion' or 'authority'—but we're not at Hogwarts." *Sandy*, 222 F.3d at 1207.

■ PacificSource points to numerous provisions in the Policy which it contends are sufficient to confer discretionary authority. One such provision broadly states that PacificSource "may adopt policies, procedures, rules and interpretations to promote orderly and efficient administration of this agreement." GraVette Aff., ¶ 3, Ex. 1, p. 23. The use of the word "interpretations" does not mean that PacificSource has the discretionary authority to interpret all plan terms when making benefit determinations. Instead, PacificSource is permitted only to adopt interpretations of the Policy that assist with its "orderly and efficient administration." Benefit eligibility determinations do not fall into that category.

■ The Policy also allows PacificSource to exercise its "judgment" regarding exclusions for procedures or treatments deemed experimental, investigational, or not medically necessary. These provisions are too narrow to demonstrate unambiguously that the Policy grants broad discretionary authority to PacificSource for all benefit eligibility determinations. Many benefit eligibility determinations do not implicate medical necessity or the investigational or experimental limitations.

■ The Plan also grants PacificSource the "final authority" in preauthorization determinations and case management decisions. Preauthorization not only is inapplicable to all benefits, but also is not at issue in this case. Moreover, "case management" may or may not be interpreted to include eligibility determinations. These narrow provisions do not demonstrate an unambiguous intent to delegate to PacificSource discretionary authority over all benefit decisions.

■ In addition, PacificSource points to the following provision as triggering deferential review: "PacificSource has the right to pay benefits for supplemental services not otherwise covered by this policy when [certain] conditions are met ... Payment of benefits for supplemental services is at the sole discretion of PacificSource ..." GraVette Aff., Ex. 1, p. 58, ¶ 3. An ability to pay supplemental benefits does not confer any discretionary authority to pay for services specifically covered by the Plan or to construe the Plan's terms.

No wording in this Policy, either in sum or substance, unambiguously grants the power to PacificSource to determine eligibility, to interpret the Plan's terms and to make binding benefits determinations, unlike other plan provisions held by the Ninth Circuit to confer such discretion. *Sandy*, 222 F.3d at 1205–06 (collecting cases). Therefore, the Policy, standing alone, is insufficient to put McHenry on notice that PacificSource possesses discretionary authority. Since PacificSource has failed to show its decision denying McHenry's claim for benefits is entitled to deference, the applicable standard of review in this case is *de novo*.

### ORDER

For the reasons stated above, McHenry's Motion for Partial Summary Judgment (docket # 13) is GRANTED and the *de novo* standard of review applies.