**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL MITCHELL,
　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

CB RICHARD ELLIS LONG TERM
DISABILITY PLAN,
　　　　　　*Defendant-Appellant,*

METROPOLITAN LIFE INSURANCE
COMPANY,
　　　　　　*Defendant-cross-defendant-*
　　　　　　　　　　　　*Appellant,*

UNUM LIFE INSURANCE COMPANY OF
AMERICA,
　　　　　　*Defendant-cross-claimant-*
　　　　　　　　　　　　*Appellee.*

No. 08-55277

D.C. No.
CV-05-00810-DDP

10707

MICHAEL MITCHELL,
            *Plaintiff-Appellee,*

v.

CB RICHARD ELLIS LONG TERM
DISABILITY PLAN,
            *Defendant-Appellant,*

METROPOLITAN LIFE INSURANCE
COMPANY,
            *Defendant-cross-defendant-
                        Appellant,*

and

UNUM LIFE INSURANCE COMPANY OF
AMERICA,
            *Defendant-cross-claimant.*

No. 08-55686

D.C. No.
2:05-cv-00810-
DDP-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
December 11, 2009—Pasadena, California

Filed July 26, 2010

Before: Stephen Reinhardt, Stephen S. Trott and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Wardlaw

## COUNSEL

Rebecca A. Hull, Esq., of Sedgwick, Detert, Moran & Arnold LLP, San Francisco, California, for appellants Metropolitan Life Insurance Company and CB Richard Ellis Long Term Disability Plan.

Glenn R. Kantor, Esq., of Kantor & Kantor LLP, Northridge, California, for appellee Michael Mitchell.

Michael B. Bernacchi and Keiko J. Kojima, of Burke, Williams & Sorensen, LLP, Los Angeles, California, for appellee UNUM Life Insurance Company of America.

## OPINION

WARDLAW, Circuit Judge:

The Metropolitan Life Insurance Company ("MetLife") appeals from the district court's judgment awarding Michael Mitchell long-term disability ("LTD") benefits and attorneys' fees, in an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. MetLife is the current insurer and administrator for the LTD benefits plan ("the Plan") provided by Mitchell's employer, CB Richard Ellis, and it insured and administered the Plan at the time that Mitchell filed his claim for benefits. Unum Life Insurance Company of America ("UNUM") was the insurer and administrator of the Plan at the time of onset of Mitchell's claimed disability in October 2003.

Because we conclude that the district court correctly held that Mitchell was eligible for benefits under MetLife's policy, and because MetLife failed to cross-claim for indemnification from UNUM in the district court action, we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Mitchell's Employment and Disability

Since 1983, Mitchell has worked as a commercial real estate broker at CB Richard Ellis. In February 2001, Mitchell was first diagnosed with restless leg syndrome after he suffered symptoms of fatigue. Over time, Mitchell's condition grew more severe. In October 2003, he was diagnosed with major depression, chronic fatigue syndrome, restless leg syndrome, REM-related obstructive sleep apnea syndrome, and hemochromatosis. Although Mitchell continued to work full time hours, his physical condition deteriorated to the point where he could not effectively perform in his job by March 2004. Because Mitchell's disability reduced his capacity to produce sales, his compensation, based entirely on commissions and bonuses, decreased substantially over time as his disability grew more severe: he earned $179,678 in 2001 and $243,857 in 2002, but only $29,329 in 2003 and $12,585 in 2004.

### B.   The Plan

CB Richard Ellis provides LTD benefits to its employees under an employee benefit plan governed by ERISA. From January 1, 2000, until December 31, 2003, CB Richard Ellis funded the Plan by purchasing insurance from UNUM, which served as the insurer and administrator of the Plan. On January 1, 2004, MetLife replaced UNUM as the insurer and administrator of the Plan. At that time, MetLife issued a new insurance policy, which specified that it held discretionary authority to determine a participant's eligibility for benefits.

The two insurers' coverage provisions differed, particularly in their definitions of "disability."

### 1. UNUM's Policy

The UNUM long term disability policy provided coverage for disability when, in UNUM's determination:

> you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

> you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury; and

> during the elimination period, you are unable to perform any of the material and substantial duties of your regular occupation.

A beneficiary must be continuously disabled for an "elimination period" of 90 days before he becomes eligible for benefits from UNUM. Coverage extends to the date that the policy or plan is cancelled, but may end earlier if other eligibility criteria are not met. UNUM's insuring agreement includes payable claims that occur while the employee is covered under the policy or plan. UNUM acts as the claims administrator, and "has discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the policy."

### 2. MetLife's Policy

On January 1, 2004, MetLife replaced UNUM as the insurer and administrator of the Plan. MetLife issued a new policy, comprised of a "Certificate of Insurance," or master plan document, as well as a summary plan description. MetLife's policy defines the term "disability" differently in

three places: once in the Certificate of Insurance, and twice in the summary plan description. The Certificate of Insurance defines "disabled or disability" as:

> due to sickness or as a direct result of accidental injury:
>
> • You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
>
> • You are unable to earn:
>
> • during the Elimination period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
>
> • after such period, more than 80% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

MetLife's summary plan sets forth two additional definitions of disability. First, the summary plan's "Plan Benefits" description specifies that a participant is considered "disabled" when determined to be "unable to perform your regular job functions due to sickness, or as a direct result of accidental injury the employee [sic] is receiving appropriate care and treatment and complying with the requirements of such treatment." The summary plan's "Definitions" section, however, defines "disability" as "a condition in which a person is unable to perform the material and substantial duties of his/her regular occupation due to illness or injury."

MetLife's Certificate of Insurance includes a clause specifying "Rules for When Insurance Takes Effect if You were

insured Under the Prior Plan on the Day Before the Replacement Date," which states:

- If You are Actively at Work on the day before the Replacement Date, You will become insured for Disability Income Insurance under this certificate on the Replacement Date.

- If You are not Actively at Work on the day before the Replacement Date, You will become insured for Disability Income Insurance under this Certificate on the date You return to Active Work.

MetLife's policy, however, also includes two differing definitions of "Actively at Work." The Certificate of Insurance defines "Actively at Work" or "Active Work" to mean "You are performing all of the usual and customary duties of Your job on a Full-Time basis." The summary plan defines "Actively at Work" or "Active Work" to mean "Being on the job as required of an employee or Independent Contractor of CB Richard Ellis."

## C. Mitchell's Claims for LTD Benefits with MetLife

On April 15, 2004, Mitchell applied for LTD benefits by completing and submitting a long-term disability claim request form with MetLife. In "Section 2: Claim Information," the request form includes three boxes to be completed concerning the onset of disability. The first box asks for the "Date of first treatment for this condition"; Mitchell supplied "10/2003." The second box seeks "Date last worked **MUST ANSWER**"; Mitchell answered "still working." The third box asks for "Date Disability Began"; Mitchell responded "10/2003."On April 23, 2004, MetLife denied Mitchell's claim on the ground that he was ineligible for benefits because he did not meet the definition of "disability" or "disabled" under the Certificate of Insurance definition because

he was capable of performing his work as "VP of Sales," which is classified as sedentary. It based this conclusion on the Attending Physician's Statement, which indicated that Mitchell received treatment for osteoarthritis of the knee and that Mitchell was "working now." The denial was also explicitly based on Mitchell's statement on the claim form that he was "still working." The letter also advised Mitchell of his right to appeal this adverse determination. Mitchell then availed himself of MetLife's administrative review process as outlined in the April 23, 2004 letter. In December 2004, he filed an appeal and submitted additional medical records, supporting letters from examining physicians, and colleagues at CB Richard Ellis.

On January 18, 2005, MetLife upheld its original decision to deny LTD benefits to Mitchell, this time finding that he did not meet its summary plan definition of disability. Under this definition, a plan participant must be "unable to perform the material and substantial duties of his/her regular occupation." MetLife further stated that an independent physician's review of the medical documentation did not support a finding that Mitchell's condition was severe enough to prevent him from performing his own occupation, and concluded that Mitchell did not meet the summary plan definition of disability. During the initial claim and the administrative review processes, MetLife never specified as a reason for denial that it was not the provider of LTD benefits at the claimed onset of Mitchell's disability in October 2003.

## D.  District Court Proceedings and Mitchell's Second Claim for LTD Benefits

On February 2, 2005, Mitchell sued MetLife and the CB Richard Ellis Long Term Disability Plan in the Central District of California, seeking LTD benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).[1] MetLife asserted a date of onset cov-

---

[1]Mitchell's complaint also named the CB Richard Ellis Medical Plan, CB Richard Ellis Life Insurance Plan, and CB Richard Ellis Pension/Retirement Plan as defendants. On March 17, 2008, the district court dismissed these defendants without prejudice.

erage defense for the first time in its answer to Mitchell's complaint. MetLife argued that it was not required to provide coverage to Mitchell because it was not the provider of LTD benefits at the onset of Mitchell's disability in October 2003, and that Mitchell should have submitted his claim to UNUM, which was the insurer and administrator for CB Richard Ellis's LTD benefits plan at that time.

After MetLife raised its new coverage defense in district court, Mitchell filed an administrative claim for LTD benefits with UNUM on October 3, 2005. Mitchell requested that UNUM review his claim for LTD benefits. On November 6, 2006, UNUM denied Mitchell's claim, finding insufficient information to support a disability claim and prejudice due to his delay in filing. UNUM noted that under the provisions of its policy, a timely claim had to be filed before April 29, 2005, and added as a second basis for the denial that a physician's review of the claim had determined that Mitchell's medical records did not adequately establish the level of impairment necessary to be considered "disabled" under its policy. Mitchell requested review of this decision on November 13, 2006. On January 11, 2007, UNUM denied Mitchell's appeal, finding that Mitchell had continued to work beyond the claimed onset date of his disability, performing the "material and substantial duties of his occupation," thus rendering him ineligible for benefits under the UNUM policy's definition of disability.

After UNUM rejected his claim, Mitchell amended his complaint on January 5, 2007, naming UNUM as an additional defendant. On January 31, 2007, UNUM filed a cross-complaint against MetLife, requesting a declaratory judgment that it did not owe LTD benefits to Mitchell, and seeking indemnification from MetLife for any sums recovered by Mitchell from UNUM. MetLife, however, did not similarly file a cross-complaint against UNUM for full or partial indemnification.

Following a bench trial, the district court issued thorough Findings of Fact and Conclusions of Law. *Mitchell v. Metro. Life Ins. Co.*, 523 F. Supp. 2d 1132 (C.D. Cal. 2007). The district court concluded that MetLife's LTD benefits policy included conflicting definitions of "disability" in its Certificate of Insurance and summary plan descriptions; that MetLife had abused its discretion in applying the more limiting summary plan definition to deny Mitchell's claim on review; and that Mitchell was eligible for LTD benefits under MetLife's definition of "disability" in the Certificate of Insurance. *Id.* at 1144-45 (citing *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002). The district court also concluded that MetLife had abused its discretion in denying Mitchell's appeal based on a lack of objective evidence that his medical condition was severe enough to warrant a finding of disability, because this standard was not included in its policy. *Id.* at 1146-47.

The district court further rejected MetLife's argument that it was not responsible for Mitchell's claim because it did not provide coverage at the time of onset of symptoms in October 2003, on the basis of waiver. The court reasoned that MetLife could "not disavow that it was the administrator and insurer for Mitchell's claim when it never raised that reason during administrative review." *Id.* at 1149. Holding that Mitchell was entitled to LTD benefits from MetLife for the 24-month period from October 2003 to September 2005, the district court also directed MetLife to pay Mitchell costs and interest, to consider Mitchell's claim for continued benefits under the Plan after September 30, 2005, and then awarded attorneys' fees to Mitchell. The district court also granted UNUM's request for a declaration that it was not the responsible party for any LTD benefits payable to Mitchell and, therefore, concluded that UNUM's claim for indemnity against MetLife was moot.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's factual findings for clear error. *Abatie v.*

*Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc) (citing *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1109 (9th Cir. 1999)). Where an ERISA plan grants discretion to the plan administrator, we review for abuse of discretion. *Id.* at 963 (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc)). This inquiry is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Id.* at 967. "The level of skepticism" with which we view a conflicted administrator's decision is low where a conflict of interest is unaccompanied "by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id.* at 968. We weigh a conflict of interest more heavily where "the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Id.* at 968-69 (citations omitted). We review de novo a district court's choice and application of the standard of review to decisions by plan administrators, *id.* at 963, as well as a district court's conclusion that the ERISA plan administrator abused its discretion. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1158 (9th Cir. 2001).

## III.   DISCUSSION

### A.   MetLife's Plan Covers Mitchell's LTD Benefits Claim

[1] The district court correctly concluded that MetLife abused its discretion by denying Mitchell LTD benefits in its administrative review process. As the district court found, Mitchell had a "disability" as defined in MetLife's Certificate of Insurance when he submitted his claim. At that time, Mitchell was receiving appropriate treatment and was unable to earn 80% of his predisability earnings during the elimination period and the next 24 months, and was impaired in his

capacity to work, despite working full-time hours. *Mitchell*, 524 F. Supp. 2d at 1148. Therefore, MetLife abused its discretion in denying Mitchell's disability claim by determining that he was not disabled, and on the basis of "an unwritten and unexplained objective evidence requirement" not specified within its policy. *Id.* at 1146 (citing *Canseco v. Constr. Laborers Pension Trust for So. Cal.*, 93 F.3d 600, 608 (9th Cir. 1996)).[2]

MetLife agrees that because it acts both as plan administrator and the funding source for benefits, it operates under a structural conflict of interest. *Abatie*, 458 F.3d at 967. We thus view its inconsistent bases of denial, culminating in its latest coverage defense based on Mitchell's claimed date of

---

[2]Although MetLife expends almost its entire opening brief arguing that the district court erred in deeming its claimed date of onset coverage defense waived because it did not raise it during the administrative review process, but only after it was sued, we need not reach this argument. MetLife was the responsible insurer at the time Mitchell submitted his claim under the plain language of its policy. In any event, we are not persuaded that the district court erred in concluding that MetLife waived its date of onset coverage defense. The purpose of ERISA's requirement that plan administrators provide claimants with the specific reasons for denial is undermined "where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary." *Glista v. UNUM Life Ins. Co. of Am.*, 378 F.3d 113, 129 (1st Cir. 2004) (citing *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 288 (2d. Cir. 2000); *see* 29 U.S.C. § 1133, 29 C.F. R. §§ 2560.503-1(g), 2560.503-1(j). These provisions " 'afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial.' " *Glista*, 378 F.3d at 129 (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992)). Requiring that plan administrators provide a participant with specific reasons for denial "enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts." *Halpin*, 962 F.2d at 689. "[A] contrary rule would allow claimants, who are entitled to sue once a claim had been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced." *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003) (citing *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998)).

onset, with some fair amount of skepticism. On appeal, MetLife argues that the district court erred by concluding it waived its date of onset coverage defense by raising it for the first time in its answer. As best as we can discern, MetLife contends that the district court violated ERISA law by in effect extending its term of coverage back to October 2003, when its coverage was not in effect until January 1, 2004. Waiver aside, this argument lacks factual support, given that Mitchell was covered by MetLife's policy under at least one of its three definitions of disability and its "Rules for When Insurance Takes Effect."

**[2]** When evaluating whether a plan administrator abused its discretion in the ERISA context, we review only the administrative record. *Abatie*, 458 F.3d at 970. Nothing in the voluminous record, however, supports MetLife's effort to exclude Mitchell from coverage due to his claimed onset date of October 2003. In support of its argument that the "onset" of a disability must occur after the Plan's effective date, MetLife points to a single line in its policy, the first clause of which states "If you become Disabled while insured." MetLife would have us read this phrase out of context and without regard to its policy definitions of "disabled" set forth in the remainder of the Plan documents. The sentence, in its entirety, states "If You Become Disabled while insured, proof of disability must be sent to Us." Thus, read in context, the clause upon which MetLife relies does not provide that coverage takes effect only if disability begins after the policy's effective date. Rather, it stipulates the requirement for submitting a claim if an individual is "disabled" while insured.

**[3]** MetLife also argues that the district court erroneously expanded coverage because he was covered only if he was "actively at work" on the date its policy replaced UNUM's. The district court, however, correctly found that Mitchell was covered because he was "actively at work" as defined by MetLife's policy on that date. MetLife's Certificate of Insurance provides that a participant is "actively at work" when

"You are performing all of the usual and customary duties of Your job on a Full-Time basis," and requires that full-time work be at least 30 hours a week. The summary plan description also defines "Actively at Work" or "Active Work" to mean "Being on the job as required of an employee or Independent Contractor of CB Richard Ellis." As CB Richard Ellis reported to both MetLife and UNUM, Mitchell was never put on leave and never stopped working as a full-time employee. Mitchell's disability, however, reduced his capacity to generate sales, which, in turn, directly reduced his commission-driven income. Mitchell thus met the requirements that he be unable to earn less than 80% of his pre-disability income, as specified in MetLife's Certificate of Insurance.

**[4]** Moreover, because Mitchell stated on his claim form that the date of onset was October 2003, MetLife had ample opportunity to assert this coverage defense, had it believed it was meritorious. Indeed, the policy required MetLife to "state the reason why [his] claim was denied and reference the specific Plan Provision(s) on which the denial is based." It also provided that "[i]f MetLife denies the claim on appeal, MetLife will send you a final written decision that states the reason(s) why the claim you appealed is being denied and references any specific Plan provision(s) on which the denial is based." MetLife failed to meet these requirements and offers no explanation for this failure. Under these circumstances, MetLife "could hardly be caught by surprise by an insistence that it comply with its own plan." *Glista*, 378 F.3d at 132. We therefore agree with the district court that MetLife abused its discretion in denying Mitchell LTD benefits.

## B.   UNUM's Cross-Complaint for Declaratory Relief and Indemnification Against MetLife.

The district court properly granted declaratory judgment in favor of UNUM. Because MetLife failed to assert a cross-claim against UNUM for indemnification, the district court did not err by failing to address such a claim.

**[5]** After Mitchell amended his complaint to include UNUM as an additional defendant, UNUM filed a cross-claim against MetLife requesting a declaratory judgment that it was not the responsible party for any LTD benefits to Mitchell, and indemnification for any sums recovered by Mitchell against UNUM. MetLife, however, failed to file a cross-complaint against UNUM in the district court, where its claim for indemnification or for a determination of the respective rights and responsibilities between the two insurers should have been asserted. Any claim by MetLife for indemnification against UNUM would have been compulsory under Federal Rule of Civil Procedure 13(a), which provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if the claim (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed R. Civ. P. 13(a). The purpose of Rule 13(a) is to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court. Rule 13(a), moreover is " 'particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.' " *Local Union No. 11, Int'l Brotherhood of Electrical Workers v. G.P. Thompson Electric, Inc.*, 363 F.2d 181, 184 (9th Cir. 1966). We therefore concluded in *Local Union* that where a party has failed to plead a compulsory counterclaim, the claim is waived and the party is precluded by principles of res judicata from raising it again. *Id.*

**[6]** Here, UNUM's cross-complaint requesting declaratory relief and indemnification arose out of the same transaction as Mitchell's amended complaint against MetLife and UNUM. MetLife, however, failed to file a cross-complaint against

UNUM in district court. It cannot now complain that the district court failed to resolve a claim that was not even before it. MetLife, moreover, failed to even appeal the district court's grant of declaratory judgment in favor of UNUM, so neither claim is properly before us on appeal.

## IV.  CONCLUSION

The district court correctly held that MetLife abused its discretion in denying Mitchell long-term disability benefits. MetLife was the responsible insurer under the terms of its policy. MetLife's policy contained no exclusion or preclusion of coverage where the date of onset of disability occurred before the effective date of the plan. Rather, the critical issue for determining coverage once the policy took effect is whether Mitchell was "disabled" as defined in the plan documents.

Because MetLife failed to raise a compulsory counterclaim requesting that the district court determine the respective rights and responsibilities between UNUM and MetLife, the district court did not err by declining to reach the issue. In light of the foregoing, we affirm the district court's judgment, including the award of attorneys' fees and costs of suit against MetLife in favor of Mitchell.

AFFIRMED.